**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

CASE NO. _____

THOMAS WOOD (3700 Flintwood Trail,
Fort Worth, Texas 76137), INDIVIDUALLY
AND AS PERSONAL REPRESENTATIVE OF
THE ESTATE OF PHILLIP TALMADGE WOOD
(DECEASED),

     Plaintiff,

       vs.

MALAYSIA AIRLINES BERHAD,
d/b/a "Malaysia Airlines," and
MALAYSIAN AIRLINES SYSTEM BERHAD,
d/b/a "Malaysia Airlines,"

     Defendants.

_____/

## COMPLAINT

The Plaintiff, THOMAS WOOD, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF PHILLIP TALMADGE WOOD, Deceased (hereinafter "the Decedent"), by and through undersigned counsel, for the purpose of making and filing his complaint against the Defendants, MALAYSIA AIRLINES BERHAD, a Malaysian company owned by the Government of Malaysia (hereinafter "MAB"), and MALAYSIAN AIRLINES SYSTEM BERHAD, a Malaysian company owned by the Government of Malaysia (hereinafter "MASB"), hereby states as follows:

## GENERAL ALLEGATION

1.     This is an action for damages, pursuant to the Convention between the United States of America and Other Governments on Aviation, at S. Treaty Doc. No. 10645, May 28, 1999, T.I.A.S. No. 13038 (effective Nov. 4, 2003) (hereinafter "Montreal Convention"), based on the

death of the Decedent, a citizen and resident of the United States, who was a passenger onboard a Boeing 777-2H6ER airplane, with serial number 28420 and registration number 9M-MRO ("the Boeing Aircraft"), operated by MASB as Malaysia Airlines Flight MH370, which was traveling from Kuala Lumpur, Malaysia, to Beijing, China on March 8, 2014 ("Flight MH370").

## THE PARTIES

2.      At all times material to this Complaint, the Decedent was a citizen, national, and resident of the United States. Specifically, he was a resident of the State of Texas.

3.      THOMAS WOOD is, and at all times material to this Complaint was, the Decedent's brother and a resident of the State of Texas. On December 28, 2015, the probate court of Tarrant County, Texas, entered an order declaring the Decedent's death, admitting the Decedent's will to probate in the State of Texas, and appointing THOMAS WOOD as the Personal Representative of the Decedent's Estate.

4.      The Defendant, MAB d/b/a "Malaysia Airlines" (formerly known as MASB), is a Malaysian air carrier domiciled in Malaysia, organized under the laws of Malaysia, and wholly owned by the Government of Malaysia. As the successor in interest to MASB, MAB is liable for the damages caused by MASB's conduct.

5.      The Defendant, MASB d/b/a "Malaysia Airlines" (now known as MAB), was, at the time of Flight MH370, a Malaysian air carrier domiciled in Malaysia, organized under the laws of Malaysia, and 69.37%-owned by the Government of Malaysia. After Flight MH370, the Government of Malaysia purchased the outstanding privately-owned shares of MASB and changed MASB's name to MAB.  Again, as the successor in interest to MASB, MAB is liable for the damages caused by MASB's conduct.

6.     As an air carrier, the Defendants engage and have engaged in "commercial activity" within the meaning of 28 U.S.C. § 1605(a)(2) of the FSIA.

7.     By operating Flight MH370, the Defendants engaged in "commercial activity" within the meaning of 28 U.S.C. § 1605(a)(2) of the FSIA.

8.     By selling a ticket through an agent for passage on Flight MH370, the Defendants engaged in "commercial activity" within the meaning of 28 U.S.C. § 1605(a)(2) of the FSIA.

9.     At all times material to this Complaint, MASB was the actual carrier for Flight MH370, which departed from Kuala Lampur, Malaysia, to Beijing, China, on March 8, 2014.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action and personal jurisdiction over the Defendants under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1602-1611 ("FSIA").

11.     The FSIA, 28 U.S.C. § 1330(a), invests this Court with subject matter jurisdiction over this action and personal jurisdiction over the Defendant in at least the following ways:

12.     First, pursuant to 28 U.S.C. §1605(a), the Defendants have waived sovereign immunity both explicitly and by implication:

   a.   The Defendants have waived sovereign immunity explicitly by applying for, and obtaining, a Foreign Air Carrier Permit issued by the Federal Aviation Authority ("FAA") under 49 U.S.C. § 41301. That permit was issued to MASB d/b/a "Malaysia Airlines" (now MAB) by order of the FAA on August 1, 2002, and remained in effect through the date of Flight MH370. In Attachment A to that permit, entitled "Foreign Air Carrier Conditions of Authority," MASB (now MAB) agreed to waive sovereign immunity under the FSIA in actions brought against it in the courts of the United States

(a) "for which the contract of carriage was purchased in the United States"; or (b) that are "based on a claim under any international agreement or treaty cognizable in any court or tribunal of the United States." This action fits both criteria. The contract of carriage—that is, the Decedent's airline ticket for Flight MH370—was purchased in the District of Columbia, in the United States; and this claim is based on an international treaty—the Montreal Convention—that has been signed and ratified both by the Government of Malaysia and the United States and that is cognizable in the courts of the United States.

b. The Defendants, agents of the Government of Malaysia, also waived sovereign immunity explicitly and by implication when the Government of Malaysia signed, adopted, and ratified the Montreal Convention. *See* Montreal Convention, Art. 2 & Art. 57.

13.     Second, pursuant to 28 U.S.C. § 1330(a), the Court may exercise both subject matter jurisdiction over this action and personal jurisdiction over the Defendants because, under 28 U.S.C. § 1605(a)(2), this action is based upon an act by MASB (now MAB) "outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that causes a direct effect in the United States."

14.     Finally, pursuant to 28 U.S.C. § 1330(a), the Court may exercise both subject matter jurisdiction over this action and personal jurisdiction over the Defendants because an "applicable international agreement," specifically, the Montreal Convention, strips the Defendants of their entitlement to immunity. The Montreal Convention applies to this action as a result of the following facts:

a. Prior to Flight MH370, the United States (where the contract of carriage was made), the Government of Malaysia (where Flight MH 370 began), and the People's Republic of China (where Flight MH370 was scheduled to land) signed, adopted, and ratified the

Montreal Convention. Therefore, these countries were, and still are, "States Parties" for purposes of the Montreal Convention;

b. The Decedent, who was a passenger onboard Flight MH370, maintained his "principal and permanent residence," s*ee* Montreal Convention, Article 33(2), in the United States;

c. At the time of Flight MH370, MASB (now MAB) operated, and still operates, "services for the carriage of passengers by air, either on its own aircraft or on another carrier's aircraft pursuant to a commercial agreement," s*ee* Montreal Convention, Article 33(2), to the following destinations within the United States: Los Angeles, California; San Francisco, California; Denver, Colorado; Chicago, Illinois; Dallas, Texas; Phoenix, Arizona; Washington, D.C.; New York, New York; and Boston, Massachusetts;

d. At the time of Flight MH370, MASB (now MAB) conducted, and still conducts, "its business of carriage of passengers by air from premises" in the United States that were "leased or owned by [MASB (now MAB)] itself or by another carrier with which [MASB (now MAB)] ha[d] a commercial agreement." *See* Montreal Convention, Article 33(2).

e. At the time of Flight MH370, MASB (now MAB) had, and still has, "a place of business," within the meaning of Article 33 of the Montreal Convention, in the following locations in the United States: 1111 E. Touhy Ave., Suite 232, Des Plaines, Illinois 60018; 500 Continental Boulevard, Suite 100, El Segundo, California 90245; 147 West 35th Street, Suite 1505, New York, New York 10001; and 3050 Post Oak Boulevard, Suite 1320, Houston, Texas 77056. *See* www.malaysiaairlines.com/my/en/contact.html.

f. MASB (now MAB) had "a place of business," within the meaning of Article 33 of the Montreal Convention, in Washington, D.C. *See* http://corp.dcra.dc.gov/bizentity.aspx/viewentitydata?entityid=2794274.

g.  At the time of Flight MH370, MASB (now MAB), was, and still is, incorporated in the following locations in the United States: Illinois; California; New York; Texas; and Hawaii. *See* www.malaysiaairlines.com/my/en/contact.html.

h.  The Decedent's "contract" for Flight MH370 was "made," pursuant to Article 33 of the Montreal Convention, in the District of Columbia, in the United States; that is, the Decedent's ticket for MH370 was issued in the District of Columbia, in the United States.

15.  The Plaintiff will serve process on the Defendants pursuant to the provisions of the FSIA, 28 U.S.C. § 1608(a)(3).

16.  The Court may exercise personal jurisdiction over the Defendants because, under the terms of the FSIA, "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have," as here, subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a), and where, as here, service will be made under 28 U.S.C. § 1608.

17.  MAB (formerly MASB) is wholly owned by the Government of Malaysia, and the Malaysian Government exercises sufficient control over MAB (formerly MASB) as to create a principal/agent relationship.

18.  MASB (now MAB) was, at the time of Flight MH370, majority-owned by the Government of Malaysia, and the Malaysian Government exercised sufficient control over MASB (now MAB) as to create a principal/agent relationship.

19.  Venue is proper pursuant to 28 U.S.C. § 1391(f)(1) because MASB (now MAB) issued the Decedent's ticket for Flight MH370, through an intermediary, in the District of Columbia; therefore, "a substantial part of the events or omissions giving rise to the claim occurred" in the District of Columbia.

20.     Venue is also proper pursuant to 28 U.S.C. § 1391(f)(3) because, at all times relevant hereto, MASB conducted business in the District of Columbia, specifically, at an office located at 1350 Connecticut Avenue, N.W., Suite 405, Washington DC, 20036; therefore, MASB was "licensed to do business or is doing business" in the District of Columbia.

21.     Finally, venue is proper pursuant to 28 U.S.C. § 1391(f)(4) because, at all times relevant hereto, the Defendants were owned by the Government of Malaysia; therefore, "the action is brought against a foreign state or political subdivision thereof."

22.     All conditions precedent to bringing this action have been met.

## THE FACTS

### The Decedent and the "Contract of Carriage"

23.     The Decedent was a citizen and resident of the United States at the time he boarded Flight MH370.

24.     In June of 1985, IBM-U.S. hired the Decedent to work in the United States.

25.     In March of 2011, the Decedent was temporarily assigned to IBM-China.

26.     The Decedent never left his employ with IBM-U.S.

27.     Prior to the accident involving Flight MH370, the Decedent accepted a second temporary assignment with IBM-Malaysia.

28.     Again, the Decedent remained an employee of IBM-U.S.

29.     The Decedent was temporarily in Kuala Lumpur, Malaysia, when, on January 7, 2014, he purchased his ticket for Flight MH370.

30.     The Decedent used the IBM-U.S. Online Travel Reservation ("OTR") system, hosted by IBM in the United States, to book the flight.

31.     OTR is an online program that uses Apollo, a travel reservation system developed and managed by a United Kingdom-based company called Travelport, to connect IBM employees to a booking and ticket-issuing system owned and operated by American Express.

32.     American Express, as the online travel agent, provides IBM employees with scheduling and fare information for, among other things, flights operated by air carriers, like the Defendants, that have authorized American Express to sell and issue tickets over the Internet to customers in the United States on their behalf.

33.     Thus, while the Decedent was physically in Malaysia when he booked his ticket for Flight MH370, he used the IBM-U.S. booking system in the United States to do so.

34.     The Decedent's ticket was issued by American Express, in its capacity as travel agent, out of its offices at Washington Dulles International Airport in the District of Columbia, in the United States.

**Flight MH370**

35.     On March 8, 2014, the Decedent boarded Flight MH370 in Kuala Lumpur, Malaysia.

36.     Flight MH370 departed from Kuala Lumpur International Airport on March 8, 2014 at 00:41 Malaysia Time (abbreviated "MYT") and was scheduled to land at Beijing Capital International Airport at 06:30 MYT.  The Boeing Aircraft climbed to its assigned cruising altitude of 35,000 feet and began traveling at a true air speed of 542 miles per hour ("mph"). But Flight MH370 never arrived in Beijing.

37.     Flight MH370 suffered an "accident" that killed all 239 people onboard, including the Decedent.

38.    On January 29, 2015, the Defendants, through a representative of the Government of Malaysia, declared that Flight MH370 resulted in an "accident" that killed all 239 people onboard, including the Decedent.

## "Direct Effects" in the United States

39.    The Defendants' actions with respect to Flight MH370 caused various direct effects in the United States, including the following:

   a.  The pain and suffering of the Decedent's survivors, beneficiaries, and heirs in the United States;

   b.  The loss of society, companionship, guidance, and services provided by the Decedent to the survivors, beneficiaries, and heirs in the United States;

   c.  The loss of support in money or in kind to the Decedent's survivors, beneficiaries, and heirs in the United States;

   d.  The loss of net accumulations of the Decedent's Estate in the United States; and

   e.  The payment on the Decedent's life insurance policies, all four (4) of which were purchased from American insurance providers in the United States and all four (4) of which, upon the Decedent's death, made payment to the Decedent's beneficiaries in the United States.

## The Decedent's "Principal and Permanent Residence"

40.    Prior to boarding Flight MH370, the Decedent always intended to return to the United States, which he considered to be his principal and permanent residence.

41.    The Decedent maintained bank accounts in the United States, even while he was abroad.

42.    The Decedent filed tax returns in the United States for each year in which he was abroad.

43.     The Decedent maintained an American Express credit card and listed his American address as his billing address for that card, even while he was abroad.

44.     Prior to his death, the Decedent was temporarily living abroad with his partner, Sarah Bajc, who is also an American citizen.

45.     The Decedent and Sarah Bajc planned to return to the United States after his temporary assignment in Malaysia had ended.

46.     Prior to his death, the Decedent made clear to his sons, Nicholas Wood and Christopher Wood, that he intended to return to his home in the United States after his temporary assignment in Malaysia had ended.

47.     Prior to his death, the Decedent made clear to his brother, the Plaintiff THOMAS WOOD, that he intended to return to his home in the United States after his temporary assignment in Malaysia had ended.

### COUNT I
### CLAIM FOR RELIEF UNDER THE MONTREAL CONVENTION
### AGAINST THE DEFENDANTS

48.     The Plaintiff incorporates the allegations laid out in paragraphs 1-47 of this Complaint as if fully set forth herein.

49.     The Decedent was a passenger onboard Flight MH370.

50.     Flight MH370 resulted in an "accident" within the meaning of Article 17 of the Montreal Convention.

51.     That "accident" led directly and proximately to the injury and death of the Decedent.

52.     Prior to March 8, 2014, the United States signed, ratified, and adopted as law the Montreal Convention, as well as all subsequent amendments to the Montreal Convention.

53.     Prior to March 8, 2014, the People's Republic of China signed, ratified, and adopted as law the Montreal Convention, as well as all subsequent amendments to the Montreal Convention.

54.     Prior to March 8, 2014, the Government of Malaysia signed, ratified, and adopted as law the Montreal Convention, as well as all subsequent amendments to the Montreal Convention.

55.     Because Flight MH370 was between points in two different nations, that is, between Malaysia and the People's Republic of China, and because both Malaysia and the People's Republic of China were, at the time of Flight MH370, signatories to the Montreal Convention, Flight MH370 constituted "international carriage" as that phrase is defined in Article 1(2) of the Montreal Convention. The Montreal Convention is therefore applicable to this action pursuant to Article 1(1) of that treaty.

56.     Article 39 of the Montreal Convention identifies two classes of carriers that are subject to liability.  One of those two classes is the "actual carrier," which is defined as one who "performs . . . the whole or part of the carriage." Under Article 39, MASB (now known as MAB) was the "actual carrier" of Flight MH370.

57.     Pursuant to Article 17 of the Montreal Convention, the carrier, that is, both MASB and MAB, "is liable for damage sustained in the case of death or bodily injury to a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking."

58.     The Defendants' liability for the injuries and death of the Decedent under the Montreal Convention is absolute, that is, it is premised on strict liability, up to 113,000 Special Drawing Rights ("SDR").

59.     In addition, pursuant to Article 21(2) of the Montreal Convention, the Defendants are liable to the Plaintiff for all personal injury or wrongful death damages exceeding 113,000 SDR

unless the Defendants can prove that: (a) the injuries and death were not due to the negligence or other wrongful act or omission of the carrier or its servants or agents; or (b) the injuries or deaths were solely due to the negligence or other wrongful act or omission of a third party.

60.     The Defendants can prove neither of the exceptions to liability set forth in Article 21(2) of the Montreal Convention.

61.     The Defendants are therefore liable to the Plaintiff for all compensatory damages and all damages to which the Plaintiff, THOMAS WOOD, the Decedent's Estate, and the survivors and beneficiaries of the Decedent's Estate may be entitled under applicable law, including but not limited to:

   a.   pain and suffering and pre-impact terror and fright of the Decedent prior to death;

   b.   pain and suffering of the Decedent's survivors, beneficiaries, and heirs after the Decedent's death;

   c.   lost society, companionship, guidance, advice, and services provided by the Decedent to the survivors, beneficiaries, and heirs;

   d.   loss of support in money or in kind;

   e.   lost net accumulations;

   f.   lost value of life;

   g.   funeral expenses; and

   h.   any other damages to which the Plaintiff, THOMAS WOOD, the Decedent's Estate, and the survivors and beneficiaries of the Decedent's Estate may be entitled under applicable law.

   WHEREFORE, in light of the foregoing, the Plaintiff, THOMAS WOOD, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF PHILLIP

TALMADGE WOOD, demands judgment against the Defendants, MALAYSIA AIRLINES

BERHAD d/b/a "Malaysia Airlines," and MALAYSIAN AIRLINES SYSTEM BERHAD d/b/a

"Malaysia Airlines," for compensatory damages, plus interest, costs, and attorneys' fees.

Respectfully submitted,

_____/s/_____
Gary A. Orseck (D.C. Bar No. 433788)[1]
Robbins, Russell, Englert, Orseck,
Untereiner & Sauber LLP
1801 K Street, N.W.
Suite 411
Washington, D.C. 20006
Tel: 202-775-4500
Fax: 202-775-4510

---

[1] The undersigned, Gary A. Orseck, is filing this Complaint on behalf of Steven C. Marks, Esq., and Roy K. Altman, Esq., of Podhurst Orseck, P.A., who are the attorneys of record and lead counsel on this case. The undersigned will immediately file a petition for admission *pro hac vice* on behalf of Attorneys Marks and Altman, who, though Florida lawyers in good standing, are set to be admitted to the D.C. District Court bar in the first week of February, 2016. The undersigned has known the Podhurst firm and its lawyers for many years, and is well aware that they are among the very few prominent law firms in the United States, if not the world, who have developed a tremendous level of expertise in aviation matters of this kind.